UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KLM CONSULTING LLC.,<br><br>                              Plaintiff,<br><br>           -v-<br><br>PANACEA SHIPPING COMPANY, INC., ET AL.,<br><br>                              Defendants. | 22 Civ. 5194 (PAE)<br><br>OPINION AND ORDER |

PAUL A. ENGELMAYER, District Judge:

Defendant and third-party Plaintiff Maersk Agency U.S.A., Inc. ("Maersk Agency")

brings this unopposed motion for summary judgment against plaintiff KLM Consulting LLC

("KLM"). Dkt. 70. For the reasons that follow, the Court grants Maersk Agency's motion for

summary judgment.

## I.       Background

### A.       Factual Background[1]

KLM is a Wyoming limited liability company, headquartered in Texas, whose operations

include exporting products from Texas to Douala, Cameroon. Compl. ¶ 2; 56.1 ¶ 1. Maersk

Agency is a Delaware corporation acting, as relevant here, as the disclosed general agent in the

United States for the ocean carrier, Maersk A/S. 56.1 ¶ 3. Panacea Shipping Company

("Panacea") is a Texas corporation operating as a freight forwarder. *Id.* ¶ 2.

---

[1] The following undisputed facts are derived from Maersk Agency's Local Rule 56.1 Statement,
Dkt. 70, Ex. 9 ("56.1"); the exhibits attached to Maersk Agency's memorandum in support of its
motion for summary judgment, Dkt. 70, Exs. 1–8; the Complaint, Dkt. 1, Ex. 1 ("Compl."); and
Maersk Agency's Answer, Dkt. 8 ("Answer"). Citations to Maersk Agency's Rule 56.1
statement incorporate by reference the documents cited therein.

In November 2020, KLM arranged with Maersk A/S, as an ocean carrier, to carry and deliver cargo for KLM to Cameroon. *See* Compl. ¶ 6; 56.1 ¶ 6; Dkt. 70, Ex. 3. The property to be shipped included one Suzuki Grand Vitara, one Mercedes C300, and one lot of personal items such as furniture, home interior items, construction equipment, and shoes. Compl. ¶ 6. To this end, KLM packed the cargo container and had it transported by truck to Houston, coordinated with Panacea so that Panacea could make arrangements for ocean carriage, and worked with Maersk as the ocean carrier. 56.1 ¶¶ 5–6. On November 30, 2020, the cargo shipped from Houston. 56.1 ¶ 13.

The Sea Waybill[2] for this cargo, issued on December 24, 2020, lists Landry Kammogne, CEO of KLM, as Consignee, Panacea as Shipper, and Maersk Agency as signatory "as agent for the Carrier Maersk A/S." Dkt. 70, Ex. 3; *see also* Compl. ¶ 6; 56.1 ¶¶ 10, 12. The Sea Waybill also incorporated by reference Maersk A/S's full bill of lading, including the standard terms and conditions thereto, publicly available online pursuant to federal common carrier regulations. *See* 56.1 ¶ 9 & n.10 (citing 46 U.S.C. § 40501(a)(1)). Those include, as relevant here: (1) a clause defining "Merchant" as "the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the Goods or of this bill of lading and anyone acting on behalf of such Person; (2) a clause defining "Carrier" as "A.P. Møller – Maersk A/S trading as Maersk Line"; and (3) an exoneration clause stating that:

> [N]o [s]ubcontractor, agent, or servant shall in any circumstances whatsoever be under any liability whatsoever to the Merchant for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from ay act, neglect or default on the Subcontractor, agent or servant's part while acting in the course of or in connection with the Goods or the Carriage of the Goods[,]

---

[2] A sea waybill "functions merely as a non-negotiable receipt that may also serve as the contract of carriage." *Delphi-Delco Electronics Systems v. M/V NEDLLOYD EUROPA*, 324 F. Supp. 2d 403, 424–25 (S.D.N.Y. 2004) (citing THOMAS J. SCHOENBAUM, 2 ADMIRALTY AND MAR. LAW §§ 10–11, 63 (3d ed. 2001)).

and further that:

> The Merchant undertakes that on claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or Sub-contractor of the Carrier which imposes or attempts to impose upon any of them or any vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the Carriage of the Goods whether or not arising out of negligence on the part of such Person. The Subcontractor, agent or servant shall also be entitled to enforce the foregoing covenant against the Merchant.

Dkt. 70, Ex. 4 ("Maersk Bill of Lading") at 4.

Although the cargo left Houston as planned, it did not arrive in Cameroon. *See* Compl. ¶ 7. Instead, through a series of events the exact contours of which are irrelevant to the present decision, KLM's cargo arrived in the United Arab Emirates ("UAE") on January 5, 2021. *Id.* ¶ 7; 56.1 ¶ 15. Thereafter, it would be several months before the container was released from the UAE and transported to its intended destination in Cameroon. Compl. ¶¶ 9–11; 56.1 ¶ 15. KLM states that this delay resulted in over $250,000 in lost sales revenue for the cargo held up in the UAE, $4,000 in travel and other costs to get the cargo released from the UAE, and the deterioration of its CEO Landry Kammogne's health due to stress. Compl. ¶¶ 10–11.

### B.   Procedural History

KLM brought suit in Texas state court against Maersk and Panacea for (1) breach of contract, (2) negligence, and (3) violation of the Texas Deceptive Trade Practices Act § 17.505(a), for misrepresenting the quality and performance of their goods and services. Compl. at 4–5. On March 24, 2022, Maersk Agency filed a notice of removal of the case to the Southern District of Texas, on the ground that KLM's allegations amounted to a claim of delay under the federal Carriage of Goods by Sea Act, 46 U.S.C. § 30701 *et seq.* ("COGSA"), which "applies *ex propio vigore* to all contracts for carriage of goods by sea between the ports of the

3

United States and the ports of foreign countries." *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 100 (2d Cir. 1999); Dkt. 1. Panacea consented to the removal. *Id.* On April 25, 2022, KLM moved to remand, Dkt. 9 at 3–4, but Judge David Hittner of the Southern District of Texas denied that motion, finding that KLM sought to recover damages caused by delay and that such an action is governed by COGSA and thus removable.

On April 29, 2022, Maersk Agency moved to transfer the case to this District, arguing that the Sea Waybill, the only contract applicable to the challenged transaction, contained a forum selection clause that provided for exclusive jurisdiction here. Dkt. 10 at 2–3. On June 13, 2022, Judge Hittner granted that motion. *See* Dkts. 14–16. Now in this District, on November 10, 2022, Maersk filed a third-party complaint against Panacea, and served it upon Panacea. Dkt. 36. However, Panacea, which did not join the transfer motion, has not, to this date, entered an appearance in this Court.[3]

On February 22, 2023, Maersk Agency filed a letter requesting a pre-motion conference noting its intention to file for summary judgment. Dkt. 54. On April 5, 2023, KLM responded and sought leave to amend its complaint to add Maersk A/S and related parties as defendants. Dkt. 58. On April 10, 2023, the Court held a pre-motion conference at which it denied KLM's request for leave to amend. Thereafter, on April 24, 2023, Maersk Agency filed a motion for summary judgment and supporting documentation. Dkts. 69, 70. KLM never filed a response.

---

[3] In a separate order today, the Court grants KLM's motion for default judgment against Panacea. Dkt. 78. In light of this decision granting Maersk Agency's motion for summary judgment in full, Maersk Agency's response in opposition to KLM's motion for default judgment as against Panacea is moot. *See* Dkt. 80.

4

## II.      Applicable Legal Standards

### A.      Unopposed Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of proving the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable to the non-moving party." *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). In reviewing an unopposed such motion, a court:

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (emphasis in original) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244).

## III.      Discussion

Maersk Agency argues that it is entitled to summary judgment against KLM as KLM brings this action under the Sea Waybill, and the plain terms of the Sea Waybill preclude KLM from bringing suit against Maersk Agency specifically. Maersk Agency is plainly correct.

As an initial matter, Maersk Agency is correct that KLM is bound by the terms of the Sea Waybill because it brought suit against Maersk Agency on the grounds that Maersk Agency violated the terms of the Sea Waybill. *See* Compl. at 4 (bringing breach of contract claim).

5

KLM brought suit initially in state court for, among other things, breach of contract. *See id.* The Sea Waybill is the contract at issue. *See Delphi-Delco Electronics Systems*, 324 F. Supp. 2d at 424–25 (Sea Waybill can serve as contract for carriage of goods); Dkt. 70, Ex. 2 at 5 (Consignee Landry Kammogne, CEO of KLM, identifying the Waybill as "the contract"). Because KLM sought to enforce the terms of the Sea Waybill against Maersk Agency, it is likewise bound by the terms of the Sea Waybill in this action. *See Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 142, 158–59 (S.D.N.Y. 2020) (plaintiff who sued on Sea Waybill bound by its terms); *Oparaji v. Atl. Container Line*, No. 07 Civ. 2124 (GEL), 2008 WL 4054412, at *6 n.6 (S.D.N.Y. Aug. 28, 2008) ("[I]t is generally accepted that a cargo owner accepts a bill of lading when he sues on it."), *aff'd*, 363 F. App'x 778 (2d Cir. 2010); *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 125 (S.D.N.Y. 1997) ("[D]efendants have filed suit on the Bill of Lading, and thereby accepted its terms."), *aff'd sub nom. Farrell Lines Inc. v. Ceres Terminals Inc.*, 161 F.3d 115 (2d Cir. 1998). KLM is thus bound by the Sea Waybill's terms and conditions.

Under the plain language of the Sea Waybill and Maersk Agency's incorporated Bill of Lading, KLM cannot seek to hold Maersk Agency, rather than the Carrier, Maersk A/S, liable for damages resulting from the delayed delivery to Cameroon. The Sea Waybill for the shipment at issue provides: "This contract is subject to the terms, conditions and exceptions, including the . . . limitation of liability . . . of the current Maersk Bill of Lading." Dkt. 70, Ex. 3 at 2. Maersk's Bill of Lading provides, in turn, that "no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or Sub-contractor of the Carrier which imposes or attempts to impose upon any of them . . . any liability whatsoever in connection with the Goods or the Carriage of the Goods[.]" Maersk Bill of

Lading at 4.  And, as the Sea Waybill itself states, Maersk Agency operated here as an agent of

Maersk A/S, the Carrier.  Dkt. 70, Ex. 3 at 2 (Maersk Agency signing Sea Waybill "As Agent").

Put together, these provisions amount to an exoneration clause not unfamiliar in bills of

lading wherein all liability is channeled to the Carrier—here, Maersk A/S—and away from

subcontractors or agents thereof—here, Maersk Agency.  *See, e.g., Sompo Japan Ins. Co. of Am.*

*v. Norfolk S. Ry. Co.*, 762 F.3d 165, 178 (2d Cir. 2014) (exoneration clause in maritime bill of

lading enforceable and prohibited suit against any party other than carrier); *Herod's Stone*

*Design*, 434 F. Supp. 3d at 159 (same).  The language in the bill of lading is explicit that "no

claim or allegation" shall be made against an "agent" of Maersk A/S, and no liability shall be

imposed on such an agent either.  Maersk Bill of Lading at 4.  Yet that is exactly what KLM

seeks to do by bringing this lawsuit against Maersk Agency.  In other words, "[t]he plain

language of the clause clearly bars Plaintiff's suit" as against Maersk Agency.  *Herod's Stone*

*Design*, 434 F. Supp. 3d at 159.  As such, Maersk Agency has established that KLM's case

against it fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court grants Maersk Agency's unopposed motion for

summary judgment.  The Clerk of Court is respectfully directed to terminate the motion pending

at docket number 69.[4]

---

[4] In light of this decision, the Court dismisses as moot Maersk Agency's third-party complaint
against Panacea, Dkt. 40,  which seeks indemnity from Panacea in the event that KLM were to
recover against Maersk Agency, as well as Maersk Agency's motion for default judgment
against Panacea, Dkt. 55.  *See also Simmons v. Kaufman 8th Ave. Assocs. of New York*, No. 09
Civ. 8502 (JSR), 2010 WL 4967837 (S.D.N.Y. Nov. 30, 2010) ("Since [the defendant's] action
against the third-party defendants is premised on [the defendant] being held liable for plaintiff's
injuries, the entire third-party complaint is moot" after a grant of summary judgment in favor of
the defendant.).

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: November 16, 2023
      New York, New York